Gabriel K. White (11797)
Daniel S. Garner (14652)
WHITE & GARNER
370 East South Temple, Suite 200
Salt Lake City, Utah 84111
Phone: (801) 849-9300
Email: *gabriel.white@utahtriallawyers.com*
       *dan.garner@utahtriallawyers.com*
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| JEFFERY RYANS, | **COMPLAINT AND JURY DEMAND** |
| Plaintiff, | |
| vs. | |
| SALT LAKE CITY CORPORATION; SALT LAKE CITY POLICE DEPARTMENT; OFFICER NICOLAS PEARCE; OFFICER KEVIN JEWKES; And JOHN DOES 1-5; | Case Number: |
| | Judge |
| Defendants. | |

Plaintiff Jeffery Ryans, by and through his attorneys, Gabriel K. White, Daniel S. Garner and the law firm of White & Garner hereby complains as follows:

## PARTIES

1.    Plaintiff Jeffery Ryans is an individual residing in Salt Lake City, Utah.

2.    Defendant Salt Lake City Corporation (the "City") is a Utah municipal corporation located in Salt Lake City, Utah.

3.    Defendant Officer Nicolas John Pearce is a police officer and K-9 handler employed by the Salt Lake City Police Department at all times relevant to this matter.

4.    Officer Kevin Jewkes is a police officer employed by the Salt Lake City Police Department at all times relevant to this matter.

5.    Salt Lake City Corporation is a Utah municipal corporation that oversees the Salt Lake City Police Department.

6.    John Does 1-5 are unknown individuals who were presumably employed by Salt Lake City Corporation and/or the Salt Lake Police Department, including, but not limited to a Sargent and a Lieutenant within the Salt Lake Police Department, who were involved in and responsible for effectuating the policy, practice or custom of diverting and/or otherwise obfuscating reports of police dog attacks on citizens, as discussed herein. Plaintiff is unaware of the names of these individuals at this time, but will amend to include their names as soon as they are specifically identified.

7.    Salt Lake City Police Department (SLCPD) is an agency of the City that employs Officer Pearce and Officer Jewkes. The Salt Lake City Police Department had primary responsibility to train, oversee and supervise Officers Jewkes and Pearce.

## JURISDICTION AND VENUE

8.    Plaintiff hereby incorporates all other paragraphs of this complaint as though fully set forth herein.

9.    This action arises under the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983. Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

10.     The claims made in this Complaint occurred and arose in Salt Lake County, State of Utah. Accordingly, venue is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

11.     Plaintiff hereby incorporates all other paragraphs of this complaint as though fully set forth herein.

12.     On or about April 24, 2020, Plaintiff Jeffery Ryans was at his home preparing to leave for his work driving a train for Union Pacific.

13.     Mr. Ryans opened the back door of his house to let his dog into the house.

14.     Mr. Ryans was standing in his backyard when Salt Lake City Police Officer Cody Orgill shined a light on him from the front yard and told him to freeze and put up his hands.

15.     Mr. Ryans immediately complied by raising his hands above his head and not moving.

16.     Officer Orgill then ordered Mr. Ryans to walk towards him.

17.     Officer Orgill was on the other side of a fence that divides the back yard of the house from the front yard on the East side of Mr. Ryans' house.

18.     Mr. Ryans immediately complied with Officer Orgill's commands.

19.     Officer Orgill asked how other police officers could get around the fence and into the back yard.

20.     Mr. Ryans informed Officer Orgill that there was a gate on the other side of the house that officers could use to access the backyard.

-3-

21.   He offered to show Officer Orgill the gate, but Officer Orgill asked him to remain where he was while other officers came around the other side of the house. Mr. Ryans again complied with Officer Orgill's commands.

22.   Officer Pearce and his K-9 ("Tuco") came around the back of the house. They were accompanied by Officer Kevin Jewkes.

23.   As soon as they came in sight of Mr. Ryans, Officer Jewkes ordered Mr. Ryans to get on his knees.

24.   Officer Pearce ordered Mr. Ryans to get on the ground.

25.   Mr. Ryans lowered himself to the ground while keeping his hands in the air.

26.   Officer Pearce continued to yell at him to get on the ground.

27.   Mr. Ryans then lowered himself face-down onto the ground, all while keeping his hands raised.

28.   Officer Pearce ordered Tuco to bite Mr. Ryans.

29.   At the time Officer Pearce ordered Tuco to bite Mr. Ryans, Mr. Ryans had fully complied with the officers' commands.

30.   At the time that Officer Pearce ordered Tuco to bite Mr. Ryans, he was on the ground, had his hands behind his back and was allowing officers to handcuff him.

31.   Officer Pearce continued to allow Tuco to bite Mr. Ryans for some time after handcuffs were put in place.

32.   As a result of the wounds inflicted by Tuco, Mr. Ryans has undergone multiple surgical procedures and has a permanent injury to his leg that will cause him to walk with a limp for the rest of his life.

## CLAIMS FOR RELIEF

33. The headings stated under each individual cause of action are for general descriptive purposes only and are not intended to limit Mr. Ryans' claims for relief. Mr. Ryans reserves the right to assert any legal theory or claim for relief applicable to the facts set forth in this Complaint or an amended complaint pursuant to F.R.Civ.P. 8.

34. The claims for relief asserted herein are asserted individually and/or in the alternative.

## FIRST CLAIM FOR RELIEF
*Deprivation of Federal Constitutional Rights*
*– 42 U.S.C. § 1983 Against Defendant Pearce*

35. Plaintiff incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

36. At all times relevant hereto, and in performance of the acts set forth herein, Defendant Pearce acted under color of state law.

37. At all times relevant hereto, and in performance of the acts set forth herein, Officer Pearce actively and personally caused the violations of constitutional rights alleged herein.

38. Officer Pearce's conduct alleged herein, including Officer Pearce's use of unreasonable or unnecessary force, subjected Mr. Ryans to the deprivation of his rights protected under the Fourth Amendment to the United States Constitution.

39.  Officer Pearce's conduct alleged herein, including (a) ordering Tuco to bite Mr. Ryans while he was complying with the Officers' demands, and (b) continuing to order Tuco to bite Mr. Ryans even after Mr. Ryans had been effectively subdued violated Mr. Ryans' rights under the Fourth Amendment to the United States Constitution.

40.  If, under the facts, Jeffrey Ryans is not deemed to have been "seized" under the *Graham* factors relating to the Fourth Amendment, and not deemed to be in custody, then Defendant Pearce's actions deprived him of life, liberty, and bodily integrity, as substantively guaranteed to Mr. Ryans under the Fifth and Fourteenth Amendments.

41.  The unreasonable, excessive, and dangerous deadly force used by Defendant Pearce, which directly caused Mr. Ryans' injuries as described above, deprived him of a liberty interest without due process of law, in violation of the Fifth and/or Fourteenth Amendments of the U.S. Constitution.

42.  Officer Pearce's actions violated Mr. Ryans' clearly established constitutional rights of which reasonable police officers are or should be aware.

43.  Defendant Pearce's actions proximately caused pain and emotional

distress to Mr. Ryans.

44.     Defendant Pearce's actions proximately caused Mr. Ryans'
        injuries.

45.     As a result of Defendant Pearce's unlawful actions, and to remedy
        misconduct of significant importance to the public, Plaintiff has
        had to retain counsel.

46.     Officer Pearce's actions manifested malicious, reckless, and
        callous indifference to the rights of Mr. Ryans.

47.     As a direct and proximate result of Officer Pearce's actions, Mr.
        Ryans has suffered permanent, disabling injuries to his leg that
        have resulted in medical expenses, lost wages, lost earning
        capacity, attorneys' fees, costs, pain and suffering and other
        general and special damages in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
*Deprivation of Federal Constitutional Rights*
*– 42 U.S.C. § 1983Against Defendant Kevin*
*Jewkes*

48.     Plaintiff incorporates by reference all other paragraphs of this
        Complaint as though fully set forth herein.

49.     At all times relevant hereto, and in performance of the acts set forth
        herein, Officer Jewkes acted under color of state law.

50.     At all times relevant hereto, and in performance of the acts set forth

herein, Officer Jewkes actively and personally caused the violations of constitutional rights alleged herein.

51. Defendant Jewkes' conduct alleged herein, specifically that, having observed that Officer Pearce was subjecting Mr. Ryans to unnecessary and excessive force, he failed intervene to protect Mr. Ryans from Officer Pearce and Tuco, violated Mr. Ryans' clearly established constitutional rights.

52. Defendant Jewkes' conduct alleged herein, including his participation in and failure to prevent the violationsof Mr. Ryans' rights in his presence by Defendant Pearce, violated Mr. Ryans' rights under the Fourth Amendment to the United States Constitution.

53. Defendant Jewkes' conduct alleged herein, including his participation in and failure to prevent the violationsof Mr. Ryans' rights in his presence by Defendant Pearce deprived Mr. Ryans of his rights to liberty and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

54. Defendant Jewkes' actions violated clearly established constitutional rights of which reasonable police officers are or

should be aware.

55.     Defendant Jewkes' actions violated Salt Lake City and the Salt

Lake Police Department's own use of force policy, which states

(in relevant part):

> 300.2.1 DUTY TO INTERCEDE
>
> *Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force.* An officer who observes another employee use force that exceeds the degree of force permitted by law should promptly report these observations to a supervisor.

Salt Lake City Police Department Policy Manual (emphasis

added).

56.     Defendant Jewkes was in a position to intercede to prevent

Officer Pearce from using unreasonable force on Mr. Ryans.

57.     Defendant Jewkes did not take any steps to intercede to prevent

Officer Pearce from using unreasonable force on Mr. Ryans.

58.     Upon information and belief, Defendant Jewkes did not report

Officer Pearce to his supervisor.

59.     Defendant Jewkes' actions proximately caused pain, physical

injury and emotional distress to Mr. Ryans.

60.     Defendant Jewkes' actions proximately caused the harms alleged by Plaintiff.

61.     As a result of Defendant Jewkes' unlawful actions, and in order to remedymisconduct of significant importance to the public, Plaintiffs have had to retain counsel.

62.     Jewkes' actions manifested malicious, reckless, and callous indifference to the rights of Mr. Ryans.

63.     As a direct and proximate result of Officer Jewkes's actions, Mr. Ryans has suffered permanent, disabling injuries to his leg that have resulted in medical expenses, lost wages, lost earning capacity, attorneys' fees, costs, pain and suffering and other general and special damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
*Deprivation of Federal Constitutional Rights*
*– 42 U.S.C. § 1983Against Defendants Salt*
*Lake City Corporation, Salt Lake City Police*
*Department, and John Does*

64.     Plaintiff incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

65.     The actions of Defendants Pearce and Jewkes were pursuant to, and consistent with, an established policy, practice, or custom of Defendant Salt Lake City and the Salt Lake Police Department.

66.   The actions of Pearce and Jewkes were pursuant to a Salt Lake City and Salt Lake City Police Department policy, practice, or custom that consists of arming police officers with police dogs that have been trained to inflict severe bodily harm on civilians and condoning the use of these dogs to apprehend suspects, also referred to herein as the Canine Apprehension Program or "CAP".

67.   Salt Lake City and the Salt Lake City Police Department enacted and administer the CAP without requiring officers to use less destructive and dangerous alternatives prior to deploying dogs against civilians, and without providing proper training and/or supervision regarding their safe, reasonable, and appropriate use.

68.   Defendant Salt Lake City Corporation was deliberately indifferent toward the proper training, arming, and supervision of its employees and agents regarding appropriate use of canines in the CAP program.

69.   The CAP program was the proximate cause of pain and suffering, permanent injury, medical expenses and other damages suffered by Mr. Ryans.

70.   As a result of Defendants Salt Lake City and the Salt Lake Police Department's actions, and in order to remedy this important issue

of public concern, Plaintiff has had to retain legal counsel.

71. As a direct and proximate result of Defendants' actions, Mr. Ryans has suffered permanent, disabling injuries to his leg that have resulted in medical expenses, lost wages, lost earning capacity, attorneys' fees, costs, pain and suffering and other general and special damages in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
*Deprivation of Federal Constitutional Rights
– 42 U.S.C. § 1983 Against Defendants Salt
Lake City Corporation, Salt Lake City Police
Department, and John Does*

72. Plaintiff incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

73. Pursuant to, and consistent with, an established policy, practice, or custom of Defendant Salt Lake City and the Salt Lake Police Department, incidents of use of force involving canines were not subject to the same review that other complaints against police officers receive.

74. Salt Lake City and Salt Lake City Police Department had a policy, practice, or custom of diverting use of force reports relating to the CAP away from the normal review process.

75. Upon information and belief, this was accomplished by John Doe Defendants, including the Sargent and Lieutenant in charge of

receiving reports of police dog attacks, intentionally withholding or burying evidence of the attacks so it was not reported to internal affairs or supervisors higher up the chain of command.

76.     Upon information and belief, this was also or alternatively accomplished by John Doe Defendants and K9 officers (including Defendant Pearce) describing the events of a dog bite attack incorrectly so as to downplay the seriousness of the attack, thus avoiding scrutiny.

77.     Because of this policy, practice, or custom, reports of officers using canines to cause severe and permanent damage while apprehending citizens were not reviewed.

78.     When news of Mr. Ryans' claims became public, on information and belief, Salt Lake City, the Salt Lake City Police Department and the Salt Lake District Attorneys' Office reviewed previously diverted or "buried" use of force complaints involving canines.

79.     Salt Lake City and the Salt Lake City Police Department ultimately referred between twenty and thirty complaints to the Salt Lake District Attorneys' Office as potentially "questionable".

80.     Upon information and belief, more than one of those prior complaints involved Officer Pearce and Tuco.

81.     The Salt Lake District Attorney's office ultimately decided to

charge Officer Pearce with felony assault for the incident described herein involving his attack on Mr. Ryans.

82.     The Salt Lake District Attorneys' Office also filed charges against Officer Pearce regarding an interaction that happened approximately eighteen months prior to the attack on Mr. Ryans.

83.     The prior case involved Officer Pearce lifting Tuco up into the air so that Tuco could bite a woman who had surrendered to police and had her hands sticking out of a car window.

84.     Upon information and belief, the incident in which Officer Pearce used Tuco to assault a woman in her car was not among the incident reports forwarded by Salt Lake City and the Salt Lake City Police Department to the District Attorney's Office.

85.     The policy, practice or custom of Salt Lake City and Salt Lake City Police Department to divert complaints involving canines and the use of force away from the normal review process prevented these officers from being effectively supervised in the use of a deadly weapon and prevented normal corrective training from taking place.

86.     But for the policy, practice or custom of Salt Lake City and Salt Lake City Police Department to divert complaints involving canines and the use of force away from the normal review process,

Mr. Ryans would not have been attacked by Officer Pearce and Tuco on the night at issue in this case.

87.　The policy, practice or custom of Salt Lake City and Salt Lake City Police Department to divert complaints involving canines and the use of force away from the normal review process was the direct and proximate cause of pain and suffering, permanent injury, medical expenses and other damages suffered by Mr. Ryans.

### FIFTH CLAIM FOR RELIEF
*Deprivation of Federal Constitutional Rights – 42 U.S.C. § 1983 Against Defendants Salt Lake City Corporation, Salt Lake City Police Department, and John Does*

88.　Plaintiff incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

89.　At all times relevant to this complaint, Defendant Salt Lake City and the Salt Lake City Police Department maintained a policy regarding the use of force by police officers during interactions with civilians.

90.　However, Salt Lake City and the Salt Lake City Police Department did not have a policy governing when and how the department's attack dogs could be used by Officers to subdue civilians.

91.　Pursuant to, and consistent with, the established practice or custom of Defendant Salt Lake City and the Salt Lake Police Department, the lack of a use of force policy governing the use

of canines to effect arrests left the determination of what force should be used with a canine up to the discretion of individual officers.

92.   Because of Salt Lake City and Salt Lake City Police Department's lack of a use of force guideline covering the use of canines to arrest citizens, officers have used canines to cause severe and permanent damage while apprehending citizens.

93.   Because citizen complaints regarding excessive force involving canines were not reviewed for compliance with any policy, Salt Lake City and Salt Lake City Police Department allowed its Officers to use canines to inflict severe bodily injury without any oversight, additional training or correction.

94.   The lack of a policy, practice or custom regarding use of force with canines was the direct and proximate cause of pain and suffering, permanent injury, medical expenses and other damages suffered by Mr. Ryans.

### SIXTH CLAIM FOR RELIEF
*Violations of Utah Constitution, Art. I, §§ 1, 6, 7, 9, 14, 25*
*(Against All Defendants)*

95.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as though fully set forth herein.

96.   The actions of Defendants described herein violated Mr. Ryans'

rights secured by Article I, Section 1 of the Utah Constitution ("All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property[.]").

97.     The actions of Defendants described above violated Mr. Ryans' rights secured by Article I, Section 7 of the Constitution of the State of Utah ("No personshall be deprived of life, liberty or property, without due process of law.").

98.     The actions of Defendants described herein violated Plaintiff's rightssecured by Article I, Section 14, which states in relevant part: "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

99.     The actions of Defendants described herein violated Plaintiff's rights secured by Article I, Section 9, which states in relevant part: "Persons arrested or imprisoned shall not be treated with unnecessary rigor."

100.    The actions of Defendants described herein violated Plaintiff's rightssecured by Article I, Section 25, which states in relevant

part: "This enumeration of rights shall not be construed to impair or deny others retained by the people."

101.  Based upon the text and historical context, case law, and other considerations, the protections and rights afforded by Article I, §§ 1, 6, 7, 14, and 25 are broader than the interests and rights afforded by the United States Constitution.

102.  Defendants' actions described herein amount to flagrant violations of the Plaintiffs' rights under the Utah Constitution.

103.  There is no other adequate state law remedy for these violations.

104.  Injunctive relief cannot redress Plaintiffs' injuries.

105.  Defendants' actions as alleged herein were the direct and proximate cause of the damages sustained by Plaintiff.

106.  In order to remedy Defendants' unconstitutional conduct, Plaintiff has had to retain counsel.

## COMPLIANCE WITH GOVERNMENTAL IMMUNITY ACT OF UTAH

Plaintiffs' constitutional claims are not subject to the provisions of the Utah Governmental Immunity Act.

With respect to the Sixth Claim for Relief, Plaintiff has complied with applicable provisions of the Governmental Immunity Act of Utah,

U.C.A. § 63G-7-101, et seq., and has provided a Notice of Claim to Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1.     A declaration and judgment that the actions of Defendants Pearce and Jewkes, John Does, and Defendants Salt Lake City and the Salt Lake Police Departments' policies and customs regarding the use of canines to apprehend suspects are and were unconstitutional;

2.     Economic and noneconomic damages as provided under applicable law and deemed appropriate by a jury;

3.     Attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988, Utah law, and equity, to the full extent provided under applicable law;

4.     Punitive damages against Defendants Pearce, Jewkes, John Does 1-5, Salt Lake City Corporation, and Salt Lake City Police Department as provided under applicable law and to the extent deemed appropriate by a jury;

5.     Costs as provided under applicable law;

6.     Pre-judgment and post-judgment interest as provided under applicable law.

7.      All other equitable relief deemed just and appropriate by the Court, including an order (a) requiring Salt Lake City and the Salt Lake Police Department to issue a policy regarding the appropriate situations in which canines can be used to apprehend citizens, (b) requiring the Police Officer Standards and Procedures program to modify its training to discourage the use of police dogs to subdue compliant citizens incident to an arrest, and (c) to implement other training, supervision, and policies required to meet federal and state constitutional requirements.

DATED this 22nd day of April, 2022.

WHITE & GARNER

*/s/ Gabriel K. White*
Gabriel K. White
Daniel S. Garner
*Attorneys for Jeffrey Ryans*